# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. 93-4009-04-CR-W-BP |
| | ) | |
| ANTHONY WILSON, | ) | |
| | ) | |
| Respondent. | ) | |

## AMENDED MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT

Anthony Wilson was 30 years old when the Court sentenced him to serve the remainder of his life in prison. He has served over 25 years, and is now 55 years old. Because of Congress passing the First Step Act in December, 2018, Mr. Wilson is now eligible for a reduced sentence. He is older and, therefore, less likely to commit further offenses. He has become a mature and responsible individual, having used his time in custody to advance his education and vocational skills. The Court should exercise its discretion and reduce his sentence.

Mr. Wilson was arrested in May, 1993, having been charged by Indictment with several crack cocaine related counts. In August, 1993 a superseding indictment was filed, charging Mr. Wilson in 6 of 7 counts with conspiracy to distribute cocaine base, possession with intent to distribute cocaine base, distribution of cocaine base, felon in possession of a firearm, and use of a firearm in relation to a drug trafficking offense. In September, 1993, a jury found him guilty of Counts 1, 2, 4, 5, and 6. The indictment, attached as Exhibit A, alleged no

specific drug quantities. The first page purports to advise that Counts 1 and 2 are Class A felonies, and that Count 4 is a Class B felony, but no subsection of the statute, and no drug quantity, is referenced in the actual charge language. Likewise, the jury was not instructed that weight was an element of any offense. (The jury instructions given in Mr. Wilson's case are attached as Exhibit B. The relevant verdict directors appear on pages 12, 16, and 18.)

In the presentence report (PSR), the probation officer concluded Mr. Wilson was responsible for 284.78 grams of cocaine base. The 1992 version of the Sentencing Guidelines Manual provided for a base offense level of 34 for any quantity of crack cocaine between 150 and 500 grams. Mr. Wilson was a career offender, which provided for a base offense level of 37. No enhancements or reductions were found to apply. Mr. Wilson's total offense level, therefore, was 37. Because he was a career offender, Mr. Wilson's criminal history category was VI. Without the career offender enhancement, Mr. Wilson would have fallen into Category IV, because he had only 9 criminal history points. Mr. Wilson's guideline range was 360 months' to life.

Here, the verdicts and the sentences imposed are inconsistent. The indictment alleged that Mr. Wilson, in Counts 1, 2, and 4, had conspired to distribute or had possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine base. We know through Supreme Court jurisprudence that Mr. Wilson was therefore only convicted beyond a reasonable doubt of Class C felonies, which each carried a maximum punishment of 20 years'.

2

Given the vague reference to § 841(b)(1)(A) and (b)(1)(B) on the first page of the indictment, the Court might find that Mr. Wilson is guilty of conspiracy to distribute 50 grams or more of crack cocaine in Counts One and Two, and possession with intent to distribute 5 grams or more of crack cocaine in Count Four. That is the threshold amount noted in the statute at the time of conviction. There too, Mr. Wilson's statutory range has changed, and he would now face a punishment range of 5 to 40 years in prison on Counts One and Two, and up to 20 years' on Count Four. In either event, Mr. Wilson's request to this Court for a sentence of no more than 26 years, concurrent, would remain the same.

**Mr. Wilson is eligible for relief even though the Court found at sentencing that he was responsible for more than 280 grams of crack cocaine.**

Setting aside for a moment the fact that the government did not prove beyond a reasonable doubt that Mr. Wilson was guilty of distributing any specific quantity of crack cocaine, much less 280 grams or more, Mr. Wilson is eligible for relief because, worst case scenario, he was charged with violating 21 U.S.C. § 841(b)(1)(A). He is serving a sentence for a violation of a statute, the statutory penalties for which were modified by the Fair Sentencing Act of 2010. "The First Step Act applies to offenses, not conduct, *see* First Step Act § 404(a), and it is [the defendant's] statute of conviction that determines eligibility for relief, *see, e.g., United States v. Beamus*, No. 19-5533, 2019 WL 6207955, at *3 (6th Cir. Nov 21, 2019); *United States v. Wirsing*, No. 19-6381, 2019 WL 6139017, at *9 (4th Cir. Nov 20, 2019). *McDonald* at *2. Most Courts to have addressed the issue have concluded that a defendant is eligible for First Step relief even when his relevant conduct for his 841(b)(1)(A) conviction included over 280 grams of crack cocaine, or over 28 grams for his 841(b)(1)(B) conviction.

In *United States v. Davis*, Northern District of Florida, 4:92CR4013-WS, the government alleged in the indictment that the defendant, Emerson Davis, "conspired to distribute and possess with intent to distribute fifty (50) grams or more of cocaine base." *Id.* at Doc No. 2245, p. 2. At sentencing the Court, relying on information in the PSR, found "Davis was responsible for 8.4 kilograms of cocaine base." *Id.* Given the wording of the indictment and that the penalty for

4

distributing 50 grams of cocaine base changed with the First Step Act, the Court concluded Davis qualified for relief under the First Step Act:

> Within the four corners of Davis's superseding indictment, there was no allegation from which it could be determined whether he would be held responsible for 50 grams, at least 280 grams, or multi-kilograms of crack cocaine. Given a charged weight of 50 grams, the statutory penalty would now be five to forty years, not ten years to life. Based on the language of the superseding indictment, it thus appears that Davis is eligible for a sentence reduction under the First Step Act because (1) his crack cocaine offense was committed before August 3, 2010; and (2) the statutory penalties applicable to his offense – as charged – were modified by § 2 of the Fair Sentencing Act.

*United States v. Davis*, Doc. No. 2245 at 9.

The Court rejected the government's argument that what mattered was the quantity of drugs found by the court at sentencing, concluding that Congress would have stated so if it intended that:

> The government suggests, instead of looking to the language of the superseding indictment, the court should look to the evidence and "determine [from] the known quantity involved in the offense [whether] that Defendant would have received the same sentence if the Fair Sentencing Act had been in effect at the time of the original sentencing, and the Government had presented its case subject to the Fair Sentencing Act requirements." ECF No. 2242 at 7. Congress could have directed courts to do what the government suggests. Instead, in the First Step Act, Congress authorized district courts to reduce the sentence of a defendant "as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed." First Step Act, § 404(b). If section 2 of the Fair Sentencing Act had been in effect with Davis's covered offense was committed, this Court would have been obliged to inform Davis at arraignment that he was facing a five-to-forty-year statutory penalty range, not a ten-year-to-life range. Congress did not direct district courts to consider, and this Court declines to consider, what the government *might* have charged had the Fair Sentencing Act been in effect when Davis's offense was committed.

*Id*. at 9-10 (emphasis in original).

5

The Court cited two other decisions consistent with its opinion. *United States v. Logan*, No. 07-20090-01-KHV, 2019 WL 498519 (D. Kan. Feb 8, 2019); *United States v. Laguerre*, No. 5:02cr30098-3, 2019 WL 861417 (W.D. Va. Feb 22, 2019).

Other courts have reached the same conclusion.[1] *See, e.g., United States v. Powell,* 360 F.Supp.3d 134, 139 (N.D. N.Y. 2019) (The drug type and quantity used to set the statutory range under the First Step Act of 2018 is the quantity charged in the indictment and found by the jury beyond a reasonable doubt."); *United States v. Francis*, No. 99-0072, 2019 WL 1983254, *2 (S.D. Ala. May 3, 2019) (relying upon the indictment to determine eligibility for First Step Act relief.); *United States v. Stanback*, 377 F.Supp.3d 618, 623 (W.D. Va. May 2, 2019) ("Under *Alleyne*, this

---

[1] On April 1, 2019, five individuals recently released from prison on the basis of the First Step Act were present at a celebration of the law's enactment at the White House. One of those was Gregory Allen who pled guilty in 2001 to possession with intent to distribute 50 grams or more of crack and was sentenced to 262 months, the bottom of the career offender guideline. In imposing the new sentence of 188 months, Judge Richard Lazzara of Florida's Middle District, rejected the government's argument that the 526 grams established at the 2001 sentencing hearing disqualified Allen, concluding instead that the wording of the indictment determined eligibility. *See United States v. Gregory Allen*, No. 8:00-cr-378 (M.D.Fla.) Docs 51, 63, 64, 66, 67).President Trump spoke at the ceremony and said:
> [T]he law rolls back [a law] that was so devastating to so many and that disproportionately impacted the African American community … In less than four months, more than 500 people with unfair sentences have been released from prison and are free to begin a new life… We're proud to have with us on stage five more Americans who have been released under the First Step Act and transformed their lives, and that includes Gregory Allen.

*See* President Donald J. Trump, Remarks by President Trump at 2019 Prison Reform Summit and FIRST STEP Act Celebration (Apr. 1, 2019) (transcript available at https://www.whitehouse.gov/briefings-statements/remarks-president-trum-2019-prison-reform-summit-first-step-act-celebration/).

6

court is not free to ignore [the jury's verdict convicting the defendant of distributing 50 grams or more of cocaine base] and impose a penalty based on the 1.5 kilograms of cocaine base referred to in the PSR."); *United States v. Brown*, No. 07-354, 2019 WL 1895090, *2 (D. Minn. Apr. 29, 2019) (". . . eligibility is determined by looking at the statute of conviction, not the defendant's conduct).

**Constitutional considerations.**

Constitutional considerations also support Mr. Wilson's argument. In *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10, 490 (2000), the Supreme Court held that "facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense," and "must be submitted to a jury, and proved beyond a reasonable doubt." "The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 115-16 (2013). *See also Burrage v. United States*, 571 U.S. 204, 210 & n.3 (2014) (applying the rule to facts that increase the penalty range for an offense under 21 U.S.C. § 841(a)(1)).

The argument relied upon by the government in *Davis* assumes that *Apprendi* and its progeny are inapplicable. The courts' former practice of using uncharged judge-found facts to determine statutory ranges was *always* unconstitutional. It did not just *become* unconstitutional when those cases were

7

decided. When the Supreme Court announces a new rule of constitutional law, whether the Court declares that rule to apply retroactively or not, it does not "imply[] that the right at issue was not in existence prior to the date the 'new rule' was announced." *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008). Rather, "the source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law." *Id.* Accordingly, the underlying right necessarily pre-exists [the Supreme Court's] articulation of the new rule." *Id.*

As the Court in *Davis* found, any assumption that *Apprendi* and *Alleyne* are inapplicable because they have been held not to be retroactive on collateral review is mistaken. Mr. Wilson is seeking relief, not on collateral review, but rather under § 404 of the First Step Act, a new statutory remedy that Congress expressly made retroactive. *See* § 404(b) (court may impose a reduced sentence "as if" the Fair Sentencing Act "were in effect at the time the covered offense was committed"). While courts have held the *Apprendi* rule is not retroactive "on collateral review" because it is procedural rather than substantive within the meaning of *Teague v. Lane*, 489 U.S. 288 (1989), that distinction does not affect the "relief sought" under Section 404. *Danforth*, 552 U.S. at 271. Instead, the *Apprendi* rule applies because "the source of [the rule] is the Constitution itself," and the "underlying right necessarily pre-exist[ed] [the Supreme Court's] articulation of the new rule." *Id.*

The government's *Davis* argument further assumed that § 404 did not give the courts authority to change the manner of determining quantity. But the unconstitutional manner of determining quantity the government urged was *never*

8

Case 2:93-cr-04009-BP   Document 171   Filed 12/16/19   Page 8 of 12

directed by Congress, and was *never* constitutional. "Congress did not unconstitutionally commit determination of drug quantity to a judge for a finding by the preponderance of the evidence … [T]hat commitment was made by the judiciary, not the legislature." *United States v. Buckland*, 289 F.3d 558, 567 (9th Cir. 2002) (en banc); *see also United States v. Cernobyl*, 255 F.3d 1215, 1219 (10th Cir. 2001) ("Section 841(b) itself is silent on the question of what procedures courts are to use in implementing its provisions, and [is] therefore [consistent with] the rule in *Apprendi*."); *United States v. Brough*, 243 F.3d 1078, 1079 (7th Cir. 2001) ("[T]he statute does not say who makes the findings or which party bears what burden of persuasion," but instead "[left] it to the judiciary to sort out."). It can't reasonably be said that when Congress enacted § 404, well after *Apprendi, Alleyne*, and *Burrage* were decided, it intended, without saying so, that courts would use an unconstitutional practice it had never sanctioned to implement the new statute. Indeed, Congress is presumed to legislate in light of constitutional requirements. *See, e.g., Rust v. Sullivan*, 500 U.S. 173, 191 (1991) ("[W]e assume [Congress] legislates in the light of constitutional limitations."); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Const. Trades Council*, 485 U.S. 568, 575 (1988) ("Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.").

9

The First Step Act directs courts to impose a reduced sentence as if the Fair Sentencing Act "were in effect at the time the covered offense was committed." Sec 404(b). It says nothing about what method to use to calculate the statutory penalty. It neither says nor implies that an unconstitutional practice used when the defendant was sentenced may be applied now. The inarguable conclusion is that Mr. Wilson is at least eligible for resentencing with a new statutory range of no more than 5 to 40 years', but more likely a range of no more than 20 years'. *See, e.g., United States v. Paul*, 2019 WL 6792752 (E.D. Va. December 12, 2019) Paul was charged with distribution of 50 grams or more of cocaine base, but the jury was not instructed on drug weight. In finding that Paul was eligible and deserving of a sentence reduction, the Court found

> "that it is inappropriate to base Paul's statutory sentencing range on the drug quantities determined by the Court at sentencing based on the PSR, and instead concludes, based on the Court's instruction to the jury that there was need for them to find more than a 'measurable amount' of the drug charged in the indictment, that Paul would have faced a statutory sentencing range of zero to twenty years' imprisonment."

*Paul* at *5. *See also, U.S. v. Jackson*, 2019 WL 6245759, at *4 (S.D. W.Va. Nov 21, 2019) ("The Court begins with Defendant's 21 U.S.C. § 846 offense. As noted above, Defendant pleaded guilty to conspiracy to distribute crack and powder cocaine. ...Count One of the Superseding Indictment does not attribute any particular quantity of crack or powder cocaine to Defendant. He therefore **defaults to a Class C felony** pursuant to 21 U.S.C. § 841(b)(1)(C), which carries a maximum penalty of twenty years imprisonment and a term of supervised release of three years to life."

10

**Guideline Considerations**

Whether Mr. Wilson's guideline range has changed is irrelevant here. First Step Act eligibility turns on the modification of the statute, not the guidelines. *See, McDonald, supra.* But Mr. Wilson's guideline range has changed.

As a career offender, Mr. Wilson's range was determined by the maximum punishment he faced. Under the unconstitutional system in use in 1993, Mr. Wilson was told he faced a maximum of life in prison, even though no drug quantity was pled or proven. Today, convicted of conspiracy to distribute and possession with intent to distribute a mixture or substance containing a detectable amount of cocaine base, Mr. Wilson faces a maximum sentence of 20 years' in prison. His guideline range, therefore will be lowered.

Even if the Court determined that Mr. Wilson faces punishment under 21 U.S.C. § 841(b)(1)(B) on Counts 1 and 2, his career offender guideline range would be lower. The career offender guideline is driven by the maximum punishment, and for Mr. Wilson that is no more than 40 years' on those counts.

**Conclusion**

The sentencing record established by a preponderance of the evidence a quantity of 284.78 grams of crack cocaine. There was no finding beyond a reasonable doubt of *any* quantity of crack cocaine. The verdicts, would, therefore, under the Fair Sentencing Act, be punishable under 21 U.S.C. § 841(b)(1)(C), which provides for a maximum penalty of 20 years for Mr. Wilson. Even if the statute of

11

conviction is rightly 21 U.S.C. § 841(b)(1)(A), those statutory penalties were also modified by the Fair Sentencing Act. In 1993, the threshold quantity of crack cocaine was only 50 grams. After the Fair Sentencing Act, that amount is now 280 grams. Mr. Wilson is, therefore, eligible for a reduced sentence.

Over the last 25 years, Mr. Wilson has shown himself to be deserving of something better than spending the rest of his life in prison. He respectfully requests this Court to exercise its discretion and reduce his sentence to no more than 26 years on each count, concurrent.

Respectfully submitted,

/s/ Laine Cardarella
Laine Cardarella
Federal Public Defender
1000 Walnut, Suite 600
Kansas City, Missouri 64106
Attorney for Defendant

## CERTIFICATE OF SERVICE

It is CERTIFIED that the foregoing was electronically filed on this 16th day of December, 2019, and that a copy was e-mailed to all parties pursuant to the ECF system.

/s/ Laine Cardarella
Laine Cardarella

12

Case 2:93-cr-04009-BP   Document 171   Filed 12/16/19   Page 12 of 12